UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NIGEL LUCOMBE,

Case No.

8:25 cv 911 KKM - LSG

Plaintiff,

v.

APR 11 2025 PM3:13
FILED - USDC - FLMD - TPA

HAWK HOMES L.L.C.
AND DAVID MISIALEK

COMPLAINT AND
DEMAND FOR JURY TRIAL

Defendants,

_____/

1.      Plaintiff, NIGEL LUCOMBE ("**Plaintiff"),** files this Complaint under the Telephone

Consumer Protection Act ("TCPA") 47 U.S.C. § 227, and its regulations, against Defendants

**HAWK HOMES L.L.C. AND DAVID MISIALEK** collectively ("**Defendants**"), and alleges

based on personal knowledge and information and belief, placed illegal unauthorized

telemarketing phone calls and texts to him in violation of the (TCPA).

### NATURE OF THIS ACTION

2.      As part of marketing their services, Defendants hired and authorized agents to place

illegal unauthorized phone calls to Plaintiff's cellular telephone and routinely violates 47 U.S.C.

§ 227(c)(5) and 47 C.F.R. § 64.1200(a)(2) by delivering more than one advertisement or

marketing texts message and phone calls to residential or cellular telephone numbers registered

with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or

permission required by the TCPA.

3.      Additionally, upon information and good faith belief, Defendants routinely violates

47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement

Telemarketing message to residential telephone numbers.

4.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes. The purpose of the TCPA and related laws is to prevent companies from shifting their marketing costs to telephone subscribers by forcing them to accept unwanted and unsolicited advertising. See, e.g., Krakauer v. Dish Network, 925 F.3d 643, 663 (4th Cir. 2019) ("The TCPA was enacted to solve a problem. Simply put, people felt almost helpless in the face of repeated and unwanted telemarketing calls").

## PARTIES

5.      Plaintiff is, and at all times relevant hereto an individual and a "person" as defined by 47 U.S.C. §153 (39), a citizen and resident of Tampa, Florida, and the subscriber and user of the cellular telephone number (813)***-7705.

6.      Defendant HAWK HOMES L.L.C. is, and at all times relevant hereto, a limited liability for-profit organization organized under the laws South Carolina and "person" as defined by 47 U.S.C. §153(39). Defendant's primary place of business is in South Carolina.  DAVID MISIALEK is Chief Executive Officer and owner of HAWK HOMES L.L.C. and can be served at 2091 Oak Grove Rd Landrum, South Carolina 29356.

7.      Defendants name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendants. Defendant HAWK HOMES L.L.C. and DAVID MISIALEK are hereinafter referred to collectively as ("Defendants") Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the DEFENDANTS affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees committed such act or omission and that at the time such act or omission was

2

committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of Defendants affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees.

## JURISDICTION AND VENUE

8.    This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and under 47.U.S.C. 227 (c) (5) as the action arises under the TCPA which is a Federal statute.

9.    The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendants directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendants to consumers in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991. 47 U.S.C. 227

10.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en m*asse. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11.    The TCPA makes it unlawful "to make any calls (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service."47 U.S.C. § 227(b)(1)(A)(iii).

12.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

3

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order "of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

14.    Separately, the TCPA bans making telemarketing calls without a do-not-call policy

Available upon demand.47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.    The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

16.    According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.    The FCC also recognizes that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used." *Inre Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115¶ 165 (2003).

18.    The FCC requires "prior express written consent "for all autodialed or prerecorded

Telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's

Written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer: (1)received clear and conspicuous disclosure of the consequences of  providing

the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

4

agreement be executed as a condition of purchasing any goods or service.

19.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Ac*t of 1991, 27 FCC Red. 1830, 1844¶33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 10 FCC Rcd. 12391, 12397¶ 13 (1995).

20.    The FCC confirmed this principle in 2013, when it explained that "a seller ...may beheld Vicariously liable under federal common law principles of agency for violations of either section 227(b) or section227(c)  that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Red. 6574, 6574 ¶1 (2013).

21.    Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gom*ez, 136 S. Ct. 663 (2016).

22.    A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson FiveStar Catering, Inc. v. Beason, Case No.* 10-10010,2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8,2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections,* 787F. Supp. 2d 408, 415 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

23.    Plaintiff successfully registered his personal cellular phone number (813) XXX-7705 on the National Do-Not-Call- Registry since November 12, 2019, which was more than 31 days prior to receiving the alleged calls.

24.    Plaintiff never asked the National Do-Not-call Registry administrator to remove him from the National-Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry (DNC) at all times relevant to this Complaint.

25.    Plaintiff registered his cellular phone number on the Do-Not-Call Registry to obtain solitude from invasive and harassing telemarketing calls. The calls prevented Plaintiff from using his cellular telephone for legitimate purposes.

26.    Plaintiff uses his cellular telephone primarily for personal, family, and household communications, and not for business purposes.

27.    Plaintiff also alleges that Defendants may have made other telephone calls prior to the calls identified below, which will be identified further in discovery.

28.    Plaintiff is the account holder and customary user of his cellular phone number.

29.    Plaintiff alleges the Defendants train their affiliates to avoid divulging too much information to leads and customers to evade the TCPA liability.

30.    Plaintiff did not have a prior business relationship with Defendants.

31.    Defendants did not have consent to call Plaintiff.

32.    Defendants are not an organization exempt from the TCPA.

33.    Defendants calls to Plaintiff were made for the purpose or intention of being an "unsolicited advertisement."

34.    Defendant HAWK HOMES L.L.C. is owned and operated by DAVID MISIALEK.

35.    Plaintiff is the sole user of the (7705) Number and is financially responsible for phone

service to the (7705) Number, including the cellular costs and data usage incurred as a result of

the unlawful calls made to Plaintiff by Defendant.

36.    Defendant HAWK HOMES L.L.C. is a Home buying service company that brokers real

estate transactions between property owners (typically owners of property that is distressed or in

need of renovations) and prospective investors.

37.    To identify prospective sellers, Defendants tracks real property transactions and

Realty websites. Defendants maintains information about prospective sellers in databases that

subject to its direction and control.

38.    Defendants transmits telephone calls and texts messages to telephone subscribers who

specifically express their unwillingness to receive unsolicited calls & text messages through the

national Do Not Call Registry maintained by the Federal Communications Commission (FCC).

39.    Defendants claims to be with an entity but is not identified by first and last name.

Defendant uses one or more telephone numbers that are closely related to or affiliated with

telephone numbers used or maintained by Defendant in and around its headquarters in Florida.

40.    Defendants promotes and markets its services by calling wireless phone users on listed

on the Do Not Call Registry in violation of the TPCA.

41.    Defendants violated the TCPA by transmitting telephone solicitation calls to Florida

residents who are registered with the Federal Do Not Call Registry.

42.    Upon information and belief, Defendants seeks to supplant the role of a

traditional real estate agent while providing the same services as a real estate agent,

and in exchange for doing so, is compensated by obtaining a homeowner's property

at a reduced price, and thereafter selling it at an inflated price.

43.    In other words, consumers such as Plaintiff would pay an effective fee to Defendants for its numerous ancillary services through Defendant's payment of a reduced purchase price to those consumers.

44.    As a result, Defendants would be (and, upon belief and information, is) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

45.    Additionally, upon information and belief, Defendants seeks to connect third party investors or homebuyers with discounted home buying opportunities through the consumers it contacts, and sells that information to those third party investors through reassignment contracts.

46.    As a result, Defendants either (1) solicited Plaintiff to sell his home at a discount in order for Defendants to resell Plaintiff's home at a profit, or (2) solicited Plaintiff to submit his information to Defendant's lead generation service and use Defendant's real estate-related services, which Defendants would then sell to other businesses for a profit.

47.    Defendants sent, or caused to be sent, at least two advertisement or telemarketing texts messages or telephone calls to Plaintiff's cellular telephone within a one-year period.

48.    Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's residential cellular data, phone storage, and battery life, Plaintiff's privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted calls, forcing Plaintiff to divert attention away from Plaintiff's

work and other activities. Not only did the receipt of the illegal solicitation calls distract Plaintiff away from Plaintiff's personal activities, Plaintiff was forced to spend time investigating the source of the calls and who sent them to him. See Muransky v. Godiva Chocolatier, Inc., 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury... is enough for standing purposes")

49.    Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages or call his cellular telephone number.

50.    Defendants sent the text messages at issue for non-emergency purposes.

51.    Plaintiff sent an internal do-not-call policy request to Defendants s's email.  Defendant never sent their internal do-not call-policy.

52.    HAWK HOMES L.L.C. failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff.

53.    Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call policy.

54.    The content of the calls made to Plaintiff show that they were for the purpose of marketing, advertising, and promoting Defendant's business and services to Plaintiff as part of an overall telemarketing strategy.

55.    The purpose of the text messages or call at issue was to advertise and to market Defendant's  house buying services. The unsolicited calls by Defendants, or its agents, violated 47 U.S.C. § 227(c).

56.    Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages or call to his cellular telephone number.

57.    Plaintiff suffered actual harm as a result of the telephone calls at issue in

9

that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

58.      Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

59.      Upon information and good faith belief, Defendants disregards consumer's status on the DNC Registry as a matter of practice, and additionally fails to even attempt to obtain prior express written consent to contact Plaintiff or other consumers regarding its telemarketing offerings, based on numerous complaints made by other consumers.

60.      Plaintiff brings this action individually, to seek redress for Defendants wrongful conduct.

61.      Upon information and belief, Defendant maintains and/or has access to Outbound transmission reports for all telephone solicitations advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each telephone solicitation made to Plaintiff.

62.      Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do- Not Call provision in 47 C.F.R. § 64.1200(c).

63.      Defendants did not place the calls to Plaintiff for an emergency purpose as Defined by 47 U.S.C. § 227(b)(1)(A)(i).

64.      Each of the above unsolicited telephonic communications by Defendant violated 47 U.S.C. § 227(c).

65.      On April 30, 2024 at approximately 7:11 P.M. Defendant placed phone sales call solicitations to Plaintiff's cellular telephone (7705) and, in doing so, transmitted to the Plaintiff's caller ID illegally "spoofed" number 904-822-1598.

66.     Defendant identified himself as Dave with Hawk Homes and claims to have bought Plaintiffs cellular phone number from a list broker. Defendant Dave claimed to "buy homes from the East Coast to West Coast in Tampa and Arizona .

67.     Defendant stated his website is www.selltohawkhomes.com and he has been in the business of buying, selling, and renovating properties located around military bases or colleges for 15 years. Plaintiff informed Defendant that he has been bombarded with sales solicitation phone calls from investors from all over the county transmitting harassing phone calls to his cellular phone pitching house buying service using similar scripts as Defendants to have him sell his property for a reduced price.

68.     Defendant claim that plaintiff's phone number appeared on the list that he bought and that the other investors that are calling plaintiff may have purchased the same list. Defendant admits that the listing broker he purchases his list from does not screen the list for members of the national do-not-call registry.

69.     The incoming telephone calls Plaintiff received from Defendant, were placed while knowingly ignoring the national do-not-call registry. The initial calls were placed without training their agents/representatives on the use of an internal do-not-call policy.

70.     Plaintiff sent a request for Defendant internal do not call policy on November 10, 2024 to hawk1@selltohawkhomes.com which is an email listed in their privacy policy on the website they own and control.

71.     Defendant failed and/or refused to send Plaintiff a copy of any internal do not call policy.

72.     On information and belief, Defendant did not have a written do-not- call policy while they were placing phone calls to plaintiff's cellular telephone.

73. On April 6, 2024 7:45 P.M. Defendant or Defendants assistant acting in its direction or control called plaintiff's mobile telephone (7705 number) from 904-822-1598 pitching their home buying service.

74. Moving forward Defendant has developed and implemented telemarketing campaigns which involves soliciting members on the do-not-call- list using spoofed technology masking their true caller ID and placing calls to consumer's wireless telephones.

75. Plaintiff has never been a past client of Defendant and never granted Defendant permission to transmit phone calls to plaintiff's cellular phone.

76. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

77. Defendants knowingly and willfully violate the TCPA for their financial benefit.

78. Defendant knowingly and willfully authorizes the placing of illegal phone calls to millions of consumers' personal cell phones en mass soliciting the purchase of their homes.

79. Defendant caused marketing text messages or telephone calls to be transmitted to Plaintiff's cellular telephone number while Plaintiff's cellular telephone number was on the National Do-Not-Call Registry.

80. Defendants text & telephone calls constitute telemarketing as defined by 47 C.F.R. § 64.1200(f)(12) because at least one purpose of the calls was to pitch a house buying service.

81. At all times relevant, Plaintiff was a citizen of the State of Florida. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

82. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39). Plaintiff has not transacted any business with Defendant within the past eighteen (18) months before receiving the above text messages. Also, Plaintiff has

not made any inquiry regarding Defendant's products or services within the past

three (3) months before receiving the above text messages.

83.    Plaintiff is the sole user and/or subscriber of his Cell Phone.

84.    Plaintiff Cell Phone has been registered to the Nation Do Not Call Registry since

November 12, 2019. Upon information and belief, this number belongs to Defendant and/or

Defendant's agent.

85.    Plaintiff did not provide Defendants with his cellular telephone number at any time, nor

did Plaintiff give permission for Defendants to call his cell phone.

86.    Plaintiff did not have an established business relationship with Defendant during the

time of the telephone solicitations from Defendants. Plaintiff had no interest in selling his house.

87.    Plaintiff did not have a personal relationship with Defendant at any point in time.

88.    Plaintiff did not give Defendants prior express invitation or consent in writing for

Defendants to call Plaintiff's cellular telephone for marketing or solicitation purposes.

89.    At all relevant times, Defendant failed to establish and implement reasonable practices

and procedures to effectively prevent telephone solicitations in violation of the regulations

prescribed under 47 U.S.C. § 227(c)(5), including the Do- Not Call provision in 47 C.F.R. §

64.1200(c).

90.    Defendants did not place the calls to Plaintiff for an emergency purpose as defined by 47

U.S.C. § 227(b)(1)(A)(i).

91.    Each of the above unsolicited telephonic communications by Defendants and/or its agents

violated 47 U.S.C. § 227(b)(1).

92.     Receiving Defendant's repeated unauthorized calls text and voice messages drained Plaintiffs' phone batteries, consumed space on Plaintiffs' cell phones, and caused Plaintiffs additional electric expenses and wear and tear on their phones and batteries.

93.     The cumulative effect of unsolicited messages like Defendant's poses a real risk of ultimately rendering the phones unusable for other purposes as a result of the phones' memories being taken up.

94.     Plaintiff were personally affected because they were frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to direct unsolicited and unauthorized phone calls and messages to their cell phones.

95.     Defendant's telephonic communications forced Plaintiffs to be deprived of the privacy and utility of their cell phone by forcing Plaintiffs to ignore or reject Defendant's disruptive calls, voice messages, dismiss alerts, and/or silence their cell phones as a result of Defendant's incessant unsolicited telephone calls.

96.     The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant placed the calls to Plaintiffs without their consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiffs' privacy and violated the spirit and intent behind the TCPA.

97.     Defendant's violations caused Plaintiffs to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. See, e.g., Mey v. Got Warranty, Inc., No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at

*8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

98.     Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. § 227, et seq., numerous times.

99.     All of the unsolicited telephone calls by Defendant and/or its agents violated TCPA 47 U.S.C. § 227(c)(5).

100.    Defendant's unsolicited phone messages caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

101.    Defendant's phone messages also inconvenienced Plaintiffs and caused disruption to Plaintiffs' daily lives.

102.    Defendant's unsolicited phone messages caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they spent numerous hours investigating the unwanted phone messages including how they obtained Plaintiffs' numbers and who the Defendant was.

103.    Through the above-alleged conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

### VICARIOUS LIABILITY OF DEFENDANTS HAWK HOMES L.L.C.AND DAVID MISIALEK

104.     Defendants HAWK HOMES L.L.C. and DAVID MISIALEK are vicariously liable for the telemarketing calls that generated the lead on their behalf.

105.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA 47 U.S.C. § 227(b)(2).

106.     The FCC has explained that its "rules generally establish that the party on whose behalf a Solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397¶ 13 (1995).

107.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Red. 559, 565 ¶ 10 (2008) (recognizing "on behalf Of 'liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party onanotherentity'sbehalfunder47 U.S.C. § 227(b)).

108.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:
[A]llowing the seller to avoid potential liability by outsourcing its
telemarketing activities to unsupervised third parties would leave
consumers in many cases without an effective remedy for telemarketing
intrusions. This would particularly be so if the telemarketers were
judgment proof, unidentifiable, or located outside the United States, as is
often the case. Even where third-party telemarketers are identifiable,
solvent, and amenable to judgment limiting liability to the telemarketer
that physically places the call would make enforcement in many cases
substantially more expensive and less efficient, since consumers (or law
enforcement agencies)would be required to sue each marketer separately
in order to obtain effective relief. As the FTC noted, because sellers may
have thousands of independent marketers, suing one or a few of them is
unlikely to make a substantive difference for consumer privacy.

In *re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588¶37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

109.    More specifically, Dish held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer" has apparent (if not actual) authority" to make the calls. *Id.* at 6586¶34.

110.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587¶36 & n.107.

111.    To the contrary, the FCC armed with extensive data about robocalls and American's Complaints about them determined that vicarious liability is essential to serve the TCPA's Remedial purpose of protecting Americans from "unwanted telemarketing invasions. *"Id.* at 6587 ¶36.

112.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers. *"Id.* at6588¶37.

113.    Defendants HAWK HOMES L.L.C. and DAVID MISIALEK are legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

114.    Defendants HAWK HOMES L.L.C. and DAVID MISIALEK knowingly and actively accepted business that originated through illegal telemarketing.

115.    Defendants HAWK HOMES L.L.C. and DAVID MISIALEK knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

116. By hiring a company to make calls on its behalf, Defendants HAWK HOMES L.L.C. and DAVID MISIALEK "manifest[ed] assent to another person. . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement")

117. Moreover, Defendants HAWK HOMES L.L.C. and DAVID MISIALEK maintained interim control over the actions of its telemarketers.

118. For example, Defendants HAWK HOMES L.L.C. and DAVID MISIALEK had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

119. Furthermore, Defendants HAWK HOMES L.L.C. and DAVID MISIALEK had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant HAWK HOMES L.L.C. and the ability to require them to respect the National Do Not Call Registry.

120. Defendants HAWK HOMES L.L.C. and DAVID MISIALEK also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

121. Defendants HAWK HOMES L.L.C. and DAVID MISIALEK donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched Defendants "home buying service in the abstract.

122. Apparent authority turns on whether a third party believes the principal authorized its Agent to act and the belief is "traceable" to a manifestation of the principal. Restatement§ 2.03 cmt. C.

123. "[A]pparent authority can arise in multiple ways and does not require that 'a principal's Manifestation must be directed to a specific third party in a communication made directly to that

person." Dish, 28 FCC Rcd. at 6586 ¶34n.102 (quoting Restatement § 2.03 cmt. c).

124.    A principal may make a manifestation "by directing an agent to make statements to third

Parties or directing or designating an agent to perform acts or conduct negotiations, placing an

Agent in a position within an organization, or placing an agent in charge of a transaction or

situation."Restatement § 2.03 cmt. c.

125.    Defendants HAWK HOMES L.L.C. and DAVID MISIALEK transferred customer

information, including Plaintiff's contact information, directly to Defendant assistants. Thus, the

telemarketer had the "ability. . . to enter consumer information into the seller's sales or customer

systems,"which The FCC has explained to show apparent agency.

126.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of

relationships. . . through discovery, if they are not independently privy to such information." Id.

at 6592-93¶46. Evidence of circumstances pointing to apparent authority on behalf of the

telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's

authorized agent." Id. at6593 ¶46.

127.    Defendants HAWK HOMES L.L.C. and DAVID MISIALEK are the liable party as the

direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer

when telemarketers solicited Plaintiff for their home buying service on behalf of Defendants.

## DEFENDANT DAVID MISIALEKIS PERSONALLY LIABLE

128.    Defendant DAVID MISIALEK refuses to take any action to stop or curtail the unlawful

sales practices and illegal unauthorized phone calls because these practices benefit Defendant

DAVID MISIALEK financially when homeowners utilize HAWK HOMES L.L.C. home buying

service.

129.    "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See United States v Pollution Serv. Of Oswego, Inc.,763 F.2d 133, 134-135 (2tR Cir.1985)

130.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." General Motors Acceptance Corp. v. Bates, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." Mozingo v. Correct Mfg. Corp., 752F.2d 168, 174 (5th Cirt. 1985) (Citing Escude Cruz v. Ortho Pharmaceutical Corp., 619F.2d 902, 907(1st Cir.1980))(Citing Texas v. American Blastfax, Inc., 164 F. Supp. 2d892 (W.D. Tex. 2001)

131.    Quoting Texas v. American Blastfax:

   The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
   To be clear, the Court finds Greg and Michael Home were the "guiding spirits"an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000,Greg and Michael Home had good reason to believe they were running a business that

20

violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Home are jointly and  severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164F. Supp. 2d892 (W.D. Tex. 2001)

132.    The Same Court held that corporate officers were also personally liable for TCPA Violations:

> The State contends Greg and Michael Home are personally liable for any TCPA Damages because they were solely responsible for the violating conduct.....For the Same reasons discussed in finding the individual defendants personally liable under The TCPA, the Court agrees. See, e.g., Barclay v. Johnson, 686S.W.2d 334,336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985,no writ) (finding personal liability for Corporate officer in DTPA misrepresentation claim, based on general rule that "a Corporate agent knowingly participating in a tortious of fraudulent act may beheld Individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax,Inc., Greg Home and Michael Home are jointly and severally liable for $6,000 in damages For their violations of the TCPA." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892(W.D. Tex. 2001

133.    At all times material to the Complaint, acting alone or in concert with others, Defendant DAVID MISIALEK has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant HAWK HOMES L.L.C. including the acts or practices set forth in this Complaint.

134.    Defendant DAVID MISIALEK is the principal director and operator of  Defendant HAWK HOMES L.L.C. controls the day-to-day operations of Defendant HAWK HOMES L.L.C. and directed their representatives, employees, agents, sales persons, and telemarketers to make TCPA violating phone calls to solicit their "home buying" service.

135.    Defendant DAVID MISIALEK knowingly and willfully ignores the law. These violations are the Direct result of the instructions Defendant DAVID MISIALEK has given to

their telemarketers, representatives, agents, employees, solicitors, salespersons, and others that carry out his schemes.

136.    Defendant DAVID MISIALEK approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for their financial benefits.

137.    Defendant DAVID MISIALEK is not merely a bystander and is the mastermind that scheme, Planned, directed, initiated, and controlled the illegal and fraudulent behavior.

138.    Defendant DAVID MISIALEK is well aware their conduct violated the TCPA and refused to alter their behavior. Defendant DAVID MISIALEK is the sole director of Defendant HAWK HOMES L.L.C. and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Defendant DAVID MISIALEK has taken no steps to stop the behavior because the behavior benefits Defendants financially. Defendant DAVID MISIALEK breaks the law with his eyes and pocketbooks wide open.

139.    Defendant DAVID MISIALEK should be held jointly and severally liable for the TCPA violations because he actually committed the conduct that violated The TCPA and /or he actively oversaw and directed this conduct.

140.    Defendant DAVID MISIALEK should be held liable because to do otherwise would simply allow him to dissolve Defendant HAWK HOMES L.L.C. and set up a new corporation and repeat his conduct. This would result in TCPA being unenforceable.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIALNUMBER

141.    The calls were to the Plaintiff's cellular phone (XXX) XXX-7705, which is the Plaintiff's personal cellular phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and

primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cellphone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

142.    Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

143.    Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

144.    Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

145.    Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phones.

## FIRST CAUSE OF ACTION

### Violation concerning Identification of Sellers and Telemarketers, 47 C.F.R. § 64.1200(d)(4)

146.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

147.    The TCPA's implementing regulations require that the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

148.  Defendant violated this provision by failing to identify itself as the Defendants in their telephone calls.

149.  By placing at least two telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, Defendant, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

150.  Defendants' first violation of the TCPA implementing regulations by calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2).

151.  Defendant second violation of the TCPA implementing regulations is failing to properly identify themselves. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

152.  The foregoing acts and omissions of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least twelve (12) violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, inter alia, failing to comply with the Do-Not-Call Registry and failing to properly identify themselves, during each call.

153.  As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

154.  Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the CPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

155.    The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $1500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5).

156.    Plaintiff's telephone number has been registered on the Federal Do Not Call Registry since at least 30 days prior to the calls described above.

## SECOND CAUSE OF ACTION

### Telemarketing Without Mandated Safeguards,47 C.F.R.§ 64.1200(d)
### (Against All Defendants)

157.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

158.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute telemarketers multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of47 C.F.R. § 64.1200(d)(1)2;

b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, inviolationof47 C.F.R. § 64.1200(d)(2)3; and,

c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of47 C.F.R. §64.1200(d)(4).

159.    Plaintiff is entitled to an award of at least $500 in damages for each such violation.47 U.S.C. § 227(c)(5)(B) and is entitled to an award of up to $1,500 in damages for each such knowing or Willful violation. 47U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION

### Defendants Violated 47 U.S.C. § 227(c)(5) of the TCPA (DNC)

160.    Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length

herein.

161.    The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

162.    The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." See 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

163.    The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. §227(a)(4).

164.    The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." See FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R § 64.1200(a)(2).

165.    The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500.00 per violation and up to $1,500.00 per violation if the violation is determined to be willful. See 47 U.S.C. §§ 227(c)(5).

166.    In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5)(A).

167.    By calling the Plaintiff's cell phone after his telephone number was registered on the National Do Not Call Registry, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and the TCPA's corresponding regulations.

168.    Defendants knew or should have known that the Plaintiff had his telephone number registered on the Do Not Call Registry.

169.    Plaintiff is entitled to damages of $500.00 per violation for each call placed and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

## FORTH CAUSE OF ACTION

### DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(e)

(Injunctive Relief)

170.    Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

171.    47 U.S.C.S. § 227(e)(1) provides it "shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States, in connection with any voice service or text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B)."

172.    Defendants masked their identities in a manner that was deceptive, rendering Plaintiff unable to ascertain the identities of the calling parties without subpoena power and therefore unable to stop the calls or seek recourse in court without first having subpoena power.

173.    Those acts and omissions by Defendants caused Plaintiff to incur damages and pecuniary harm.

174.    Plaintiff seeks injunctive relief in the form of an Order requiring the Defendants to demonstrate to the Court that they have ceased and desisted their practice of masking their identities and "spoofing" their phone numbers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    An award of actual damages pursuant to 47 U.S.C. § 227(b)(3)(B) and Fla. Stat. § 559.77;

b.    An award of statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each willful or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(C);

c.    Additional statutory damages of $500 per violative telephone call as provided under 47 U.S.C. 227 ( C);

d.    Treble damages of $1,500 per violative telephone call as provided under 227(c):

e.    An award of actual damages pursuant to Stat. § 509.059

f.    An award of statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each willful or knowing violation pursuant to Fla. Stat. § 509.059.

g.    An award of statutory damages of $1500 for  telephone call in statutory damages arising from the TCPA 227 (c ) intentional violations jointly and severally against Defendants text messages and telephone calls.

h.     Injunctive relief prohibiting Defendant from further violations of the TCPA and ceased and desisted their practice of masking their identities and "spoofing" their phone numbers

An award of reasonable attorney's fees and costs; and any other relief this Court deems just and proper.

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records,

lists, electronic databases or other itemization of telephone numbers associated with Defendant

and the calls as alleged herein.

## **JURY DEMAND**

Plaintiff hereby demand a trial by jury.

Dated: April 11, 2025                         Respectfully submitted,


Nigel Lucombe, Pro Se
P.O. Box 2589
Lutz, FL 33548
Nluccombe@Gmail.com
Tel: 813-900-7705